# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 08-107 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| Suresh Harlan Small, | **OPINION AND ORDER** |
| Defendant. | |

Suresh Harlan Small, Defendant, *Pro se*.

Andrew S. Dunne and John Docherty, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Suresh Harlan Small's ("Small") *pro se* motion for release to home confinement in light of the COVID-19 pandemic (Doc. No. 73) and request for appointment of counsel (Doc. No. 74) (collectively, ("Motion")).[1]

---

[1] On June 25, 2020, Small filed two substantially similar letters to the Court: one to Judge Frank (Doc. No. 73) and a second to the Clerk of Court (Doc. No. 74) requesting compassionate release and appointment of a public defender. (*See* Doc. Nos. 73, 74.) The Court construes Small's letters as a request for relief under both the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release"). As discussed below, the Court finds that Small's request fails under either analysis. While Small also requested that the Court appoint him a public defender, the Court defers to the recommendation of this District's Compassionate Release Motions Screening Team that Small's circumstances do not rise to the level such that appointment of counsel is necessary.

The United States of America (the "Government") opposes Small's Motion.[2]  (Doc. No. 76 ("Govt. Opp.").)  For the reasons discussed below, the Court respectfully denies Small's Motion.

## BACKGROUND

On November 19, 2008, Small entered a plea of guilty without a plea agreement to five counts of armed bank robbery pursuant to 18 U.S.C. § 2113(a) and (d) (Doc. No. 43), as charged in a five-count Superseding Indictment (Doc. No. 20.).  On July 14, 2009, this Court sentenced him to 240 months' imprisonment on each count, to be served concurrently, followed by a 5-year term of supervised released.  (Doc. Nos. 52, 54.)

On July 24, 2009, Small appealed his sentence to the Eighth Circuit on the grounds that this Court erred in calculating his guidelines range, applying an obstruction-of-justice enhancement, and not granting a downward departure.  (Doc. No. 55.)  On April 2, 2010, the Eighth Circuit affirmed this Court's decision.  *United States v. Small*, 599 F.3d 814, 816 (8th Cir. 2010).  On July 1, 2016, Small filed a motion pursuant to 28 U.S.C. § 2255, again challenging his sentence.  (Doc. No. 65.)  This Court denied his motion on February 2, 2018.  (Doc. No. 71.)

---

[2]    Small's reply to the Government's opposition was due August 6, 2020; however, he did not respond.  (*See* Doc. No. 75.)  The Court did receive and consider several letters in support of Small's release.  (Doc. Nos. 77-81.)  It is clear that Small has a very supportive family and friends, and that he is well loved.  The Court recognizes that Small suffered trauma as a child, and that he is remorseful for the actions that led to his incarceration.  The fact that he is in prison, and that the Court declines to grant his immediate release, does not mean that he is a bad person or that he cannot have a positive impact on those around him.

Small is currently incarcerated at Schuylkill FCI in Pennsylvania. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed August 19, 2020). According to the Bureau of Prisons ("BOP"), Small's release date is June 5, 2026. *Id*.

Small now moves for release in light of the COVID-19 pandemic.[3] Small asserts that because he suffers from pre-diabetes, mild seizures, and asthma, he is at high risk of death or serious complications if he were to contract COVID-19. (Motion at 1.) Small asks that the Court grant him compassionate release or release him to home confinement. (*Id.*)

## DISCUSSION

**I.     The CARES Act**

The First Step Act ("FSA") was enacted into law on December 21, 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194. As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007. *See* 18 U.S.C. § 3624(c)(1).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter. 18 U.S.C. § 3624(c)(2). Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.*; FSA § 602.

---

[3]     As discussed above, the Court construes Small's Motion as a request for relief under both the Cares Act and pursuant to pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

3

Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations. The BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, starting with the inmates incarcerated at facilities that experienced the first COVID-19 cases (FCI Oakdale, FCI Danbury, FCI Elkton) and continuing with similarly-situated facilities to determine which inmates are suitable candidates for home confinement. BOP Update on COVID-19 & Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (Last accessed August 19, 2020).

As noted above, the BOP has exclusive authority to determine the placement of prisoners. *See* 18 U.S.C. § 3624(c)(2). Neither the CARES Act nor the FSA alters this authority. *See United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and*

4

*recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst.*, Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Moreover, Courts have consistently held that placement questions are not reviewable.  *See*, *e.g.*, 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine [defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP."); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025 at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019).  Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement." *James*, 2020 WL 1922568, at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

5

In short, because release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate.  *See* 18 U.S.C. § 3624(c). Accordingly, to the extent that Small seeks release to home confinement, the Court respectfully denies his Motion because it lacks the authority to consider his request.

## II.     Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term of imprisonment after considering § 3553(a) factors if it finds that:  (1) "extraordinary and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "the reduction is consistent with this policy statement."[4]  USSG § 1B1.13 ("Statement").  The Statement includes an application note that defines "extraordinary and compelling reasons" as (1) medical conditions which diminish the ability of the

---

[4]     While the policy statement refers only to motions filed by the BOP Director, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

6

defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[5] *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[6] *Id.*

Small asserts that his Motion is properly before the Court because a request for release he made to the warden at Schuylkill FCI was denied on May 15, 2020. (Motion at 1.) While Small did not submit a copy of his request or denial, the Government does not appear to object to Small's Motion on procedural grounds. (*See* Govt. Opp. at 14.) Taking Small at his word and assuming that the Court has the authority to properly consider his request for Compassionate Release, the Court finds that it fails on the merits

---

[5] The Statement cites examples of qualifying medical conditions including metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia. (Statement.)

[6] While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

because Small does not present an extraordinary and compelling reason to warrant release.

While Small asserts that he suffers from pre-diabetes, mild seizures, and asthma, the Court finds nothing in the record to substantiate this assertion. Moreover, the Centers for Disease Control and Prevention ("CDC") does not include pre-diabetes or mild seizures as conditions that elevate a person's risk for severe illness if that person contracts COVID-19.[7] While the CDC does include moderate or severe asthma as a condition that may increase risk for severe illness, Small indicates only that "he suffers from asthma." (Motion at 1.) Without additional information, the Court declines to speculate on the severity of Small's condition or any level of increased risk. The Court also observes that Schuylkill FCI has just one reported case of the COVID-19 virus, and that person recovered. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last accessed August 19, 2020). Moreover, there is no indication that Schuylkill FCI will be unable to handle an outbreak or accommodate Small's specific concerns.[8]

---

[7] *See* CDC, People of Any Age with Underlying Medical Conditions *revised* July 17, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed August 19, 2020).

[8] Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accesses July 23, 2020). Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates. (*Id.*) Current measures also include a 14-day isolation period, and limited group gatherings. *See*

While the Court understands the gravity of the COVID-19 pandemic and is mindful of Small's concerns, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release.  Accordingly, the Court respectfully denies Small's Motion.

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks authority to consider Small's Motion under the CARES Act because the decision of where to place a defendant is solely within the BOP's discretion to dictate.  The Court also finds that Small is ineligible for Compassionate Release because he has not demonstrated an extraordinary and compelling reason to warrant release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Suresh Harlan Small's *pro se* motion for compassionate release (Doc. No. [73]) and request for appointment of counsel (Doc. No. [74]) are respectfully **DENIED**.

Date:  August 20, 2020                               s/Donovan W. Frank
                                                     DONOVAN W. FRANK
                                                     United States District Judge

---

Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed August 19, 2020).  The BOP periodically updates its Plan and is currently in Phase IX.  BOP COVID-19 Action Plan Phase VII, https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf.  (last accessed August 19, 2020).